Opinion issued April 4, 2002





 







In The

Court of Appeals

For The

First District of Texas






NO. 01-00-01281-CV






NATIONAL CONVENIENCE STORES, INC., Appellant


V.


ANGELA EREVIA, Appellee






On Appeal from the 149th District Court

Brazoria County, Texas

Trial Court Cause No. 5373*RM98






O P I N I O N


 A jury awarded appellee, Angela Erevia, $11,000 in actual damages in her
premises liability action against appellant, National Convenience Stores ("NCS"). 
In a single point of error, NCS contends that no legally or factually sufficient
evidence was presented to show that it had knowledge of the dangerous condition. 
We affirm. 

Background

 Erevia and her mother-in-law entered the Stop-N-Go convenience store in Old
Ocean on July 7, 1997, to purchase cold drinks. Erevia filled a cup with ice and a soft
drink and was walking towards her mother-in-law when she slipped near a barrel-type
display that contained ice and drinks. Erevia complained of injuries to her knee and
back as a result of the fall.

Erevia did not see what she slipped on before falling, but testified that she fell
into a large puddle of water. Her iced drink also spilled in the fall. Her mother-in-law testified that she had noticed a puddle and walked around it, but she did not warn
Erevia or the store clerk. On the stand, Erevia's mother-in-law described the puddle
as containing only water, but in prior statements she had mentioned both ice and
water. The store clerk stated that she swept up only ice, not water. Although the
store had video cameras in place, the tape did not directly show the fall or any water
and/or ice on the floor.

 It is undisputed that there were no mats or warning signs in place around the
barrel-type display. The display was approximately four feet tall and resembled a
Coca-Cola bottle. Customers could retrieve a drink by lifting a lid on top of the
display, reaching inside, and pulling out a beverage. 

 The store manager testified that there was a heightened concern about ice and
water near iced-barrel displays. Erevia introduced the store's Safety and Security
Workbook ("safety workbook") that instructed employees to place a safety absorbent
mat under each barrel to absorb moisture. According to the manager, the employees
tried to keep watch over the area and clean up any ice or water that spilled, but the
store had no mats that could be placed under the barrels. She further testified that
there were no leaks in the display either before or after the incident. 

Standards of Review

 In its single point of error, NCS claims the evidence is legally and factually
insufficient to support the judgment because there was no evidence presented to
establish that NCS had actual or constructive knowledge of a condition posing an
unreasonable risk of harm. In reviewing a no evidence point, we must view the
evidence in a light which tends to support the finding of the disputed fact and
disregard all evidence and inferences to the contrary. Weirich v. Weirich, 833 S.W.2d
942, 945 (Tex. 1992). If more than a scintilla of evidence exists, it is legally
sufficient. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993). To rise
above a scintilla, the evidence offered to prove a vital fact must do more than create
a mere surmise or suspicion of its existence. Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983). In determining legal sufficiency, we consider whether the
evidence rises to a level that would enable reasonable and fair-minded people to
differ in their conclusions. Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25
(Tex.1994)).

 When considering a factual sufficiency challenge to a jury verdict, we must
consider and weigh all of the evidence, not just that evidence which supports the
verdict. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-407 (Tex. 1998). We
can set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence that the verdict is clearly wrong and unjust. Id.; see Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986). A court of appeals is not a fact finder. Accordingly,
we may not pass upon the credibility of witnesses or substitute our judgment for that
of the jury, even if the evidence would clearly support a different result. Ellis, 971
S.W.2d at 407; see also Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986).

Analysis

 The elements of a premises liability slip-and-fall action are well established. 
The plaintiff must show:

 (1) actual or constructive knowledge of a condition on the premises by
the owner or occupier;

 (2) that the condition posed an unreasonable risk of harm;

 (3) that the owner or occupier did not exercise reasonable care to reduce
or eliminate the risk; and 

 (4) that the owner or occupier's failure to use such care proximately
caused the plaintiff's injury.


CMH Homes, Inc. v. Daenen, 15 S.W.3d 97, 99 (Tex. 2000) (citing numerous cases).

 This case turns on whether the dangerous condition was the water on the floor
or the iced barrel itself, without any protective mats placed around it. NCS notes that
there was no evidence suggesting that the clerk had prior knowledge of the puddle on
the floor. (1) Further, it argues, there was no evidence demonstrating the existence of
the puddle for a sufficiently long period of time to establish NCS's constructive
knowledge. Erevia effectively concedes that she did not present evidence to establish
the store's knowledge of this particular puddle, but she argues that sufficient
evidence, namely the manager's testimony and the safety workbook, was admitted to
allow the jury to find that the iced barrel itself was a dangerous condition of which
the company was aware.

 Before discussing whether the barrel itself was a dangerous condition, we 
address NCS's claim, first raised in its reply brief, that the characterization of the
barrel itself as a dangerous condition is outside the pleadings. Erevia's original
petition stated, "Defendants . . . knew or reasonably should have known of the
unreasonably dangerous condition and neither corrected nor warned the Plaintiff. 
Specifically, Defendants knew or should have known of the water that had been
leaking from an iced tub containing beer within the Defendant's premises." NCS
contends that the petition identified only the water as the dangerous condition. 
However, Erevia focused on the barrel itself as a known danger in her opening
statement, introduced the safety workbook with it instructions on mats, examined the
store manager regarding store procedures and the safety problems associated with
iced barrels, and argued extensively in closing that the barrel was a known hazardous
condition in the store. At no time did NCS object that any of this was outside the
pleadings. Thus, this theory, if not adequately raised in the pleadings, was tried by
consent. A party who allows an issue to be tried by consent, and who fails to raise
the lack of a pleading before submission of the case, cannot later raise the pleading
deficiency for the first time on appeal. Roark v. Stallworth Oil and Gas, Inc., 813
S.W.2d 492, 495 (Tex. 1991).

 On the merits of the claim, a decision as to whether the iced barrel itself
constituted a dangerous condition requires a review of the Texas Supreme Court's
binding decisions in slip-and-fall cases. NCS asserts the scenario is controlled by
H.E. Butt Grocery Co. v. Resendez, 988 S.W.2d 218 (Tex. 1999) (per curiam). 
Erevia, on the other hand, contends the case is controlled by Corbin v. Safeway
Stores, Inc., 648 S.W.2d 292 (Tex. 1983).

 In Corbin, the supreme court established that a self-service display could itself
be a dangerous condition, and a storeowner could be liable "even in the absence of
evidence showing the storeowner's actual or constructive knowledge of the presence
on the floor of the specific object causing the fall." Corbin, 648 S.W.2d at 295. The
self-service display at issue there held green grapes in an "open, slanted bin above a
green linoleum tile floor." Id. at 296. Safeway's policy was to keep large non-skid,
non-slip walk-off mats in front of the grape display, but the plaintiff testified that he
saw no mat when he slipped and fell on a grape. Id. at 294. Erevia argues that the
iced barrel is analogous to the Corbin grape display, and she need not show that the
store had knowledge of the particular puddle in question.

However, the supreme court has since made it clear that, as a matter of law,
"the mere fact that a store has a customer sampling display cannot, without more, be
evidence of a condition on the premises that poses an unreasonable risk of harm." 
Resendez, 988 S.W.2d at 219. In Resendez, a grocery store had loose grapes available
for sampling in a bowl that was "level, sitting on ice and recessed about five inches
below the tables (sic) surface. Each display table had a three-inch railing around its
edges. The floor of the entire produce section was a non-skid surface and floor mats
were in place around the display tables. There were also warning cones near the
grape displays." Id. at 218-19. The court noted, "In Corbin, there was more evidence
than the mere existence of a display. It was the manner in which Safeway displayed
the grapes--in a slanted bin over a linoleum tile floor with no protective floor
mat--that created an unreasonable risk of customer falls from grapes falling on the
floor." Id. at 219. NCS contends that because the barrel display was lidded and
recessed, so that customers had to reach down into it to retrieve a drink, it was
analogous to the grape display in Resendez, rather than that in Corbin. Thus, its mere
presence would not put the store on notice about a dangerous condition.

Resendez is readily distinguishable from the case before us. Again, the clear
holding of Resendez was that "the mere fact that a store has a customer sampling
display cannot, without more, be evidence of a condition on the premises that poses
an unreasonable risk of harm." Resendez, 988 S.W.2d at 219 (emphasis added). 
Here, however, there is much more than the mere presence of a self-service display. 
The store manager testified that water on floors was recognized as a hazard because
it endangered the safety of employees and customers and potentially exposed the
company to lawsuits. Further, she testified that ice could spill out when drinks were
removed from barrels; that many drinks were sold from these type displays; and that
there was a heightened concern about water and ice around iced barrels. Erevia also
highlighted the company safety workbook's instructions that absorbent mats should
be placed under iced barrels. We find that these added circumstances remove the
present case from the direct holding of Resendez and make the situation very similar
to that in Corbin. 

In 1992, while summarizing how the knowledge requirement in Corbin was
met, the supreme court stated, "Safeway did not have to know that a particular grape
was on the floor at a particular time because it knew that the grapes would be on the
floor due to the nature of the display." Keetch v. Kroger Co., 845 S.W.2d 262, 265
(Tex. 1992). More recently the supreme court has said, "The grape display in Corbin
allowed grapes to fall on the floor throughout each day and had no mat to protect
customers from slipping. The display constituted a dangerous condition from the
moment it was used." CMH Homes, Inc. v. Daenen, 15 S.W.3d 97, 101 (Tex. 2000). 
Here, the jury could infer from the manager's testimony that ice falling from iced
barrels was a common problem associated with the nature of the display. Combining
this with the company policy requiring mats under such displays, (2) the jury could
rightly decide that NCS had knowledge of a condition that posed an unreasonable risk
of harm. Thus, the evidence was legally and factually sufficient.

We overrule NCS's sole point of error.

 We affirm the judgment. 


 


 Lee Duggan, Jr. (3) 

 Justice


Panel consists of Justices Wilson, Jennings, and Duggan. (4)

Publish. Tex. R. App. P. 47.
1. We note that the parties disputed whether water, ice alone, or a
combination of water and ice was on the floor. However, because the
case does not turn on this distinction, we will refer to this condition as
the "puddle" for the sake of simplicity.
2. In Corbin, the supreme court noted that it was not penalizing Safeway
for its diligence in instituting the use of mats as a company-wide safety
measure. Corbin, 648 S.W.2d at 297-98. The court stated, "If
reasonable store conduct includes the use of mats or other floor
coverings or even warnings in front of a particular display, then Safeway
may be held liable for not using them, regardless of whether company
policy requires them." Id. at 298. Likewise, we note that NCS's failure
to use safety mats under these circumstances, not its company policy, is
key to its liability; however, the safety workbook does help to
demonstrate NCS's actual knowledge of this dangerous condition.
3. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.
4. The Honorable Davie L. Wilson, retired Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.