Opinion issued June 9, 2005










In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00134-CV




CLAYTON EDWARD PRESSWOOD, Appellant

V.

JULIA W. GOEHRING, Appellee




On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2001-38325




MEMORANDUM OPINION
          Clayton Edward Presswood, appellant and defendant below, appeals a
judgment awarding $64,384.97, which includes a $5,000 award for future medical
expenses, to Julia W. Goehring, appellee, for damages resulting from an automobile
accident. Appellant admitted fault, and the case was tried to a jury on damages only. 
In two issues, appellant challenges (1) the trial court’s limitation of his cross-examination of Goehring regarding her pre-existing back and neck problems, and (2)
the trial court’s jury charge submitting future medical damages as an element of
recovery. We modify the judgment and affirm.
BACKGROUND
          On Tuesday, February 15, 2000, appellant rear-ended Goehring while her
vehicle was stopped for a red light. At trial, appellant testified that the collision was
his fault. Goehring testified that, although she initially told appellant that she was
“alright,” she later exhibited symptoms of injury such as stiffness and pain in her neck
and back and that she saw a physician the day after the accident. On the following
Sunday, according to Goehring’s testimony, her “whole nervous system shut down”
when she suffered uncontrollable leg tremors and blurred vision, was unable to walk
or speak, and had a blackout. She testified that her husband took her to the
emergency room and that she remained in the hospital for five days. 
          The medical records of Goehring’s post-accident treatment were admitted into
evidence and indicate that, when admitted to the hospital, Goehring indicated that she
was a “generally healthy female with no medication” and did not mention any prior
injuries or medical treatment. Upon her discharge from the hospital, Goehring was
ordered not to climb stairs, not to lift anything heavier than one pound, not to drive,
and to participate in outpatient physical therapy to improve her walking. Goehring
testified that she had to use a walker immediately after leaving the hospital and that
the physical therapy lasted several months. She also stated that, for three weeks
following her discharge, she had to rely on friends and neighbors to prepare meals for
her and her children and to take her children upstairs to put them to bed. Goehring
stated that she was still suffering pain at the time of trial and could not pick up her
five-year-old daughter.
          Dr. Sheila Jacobson, a neurologist, testified by deposition that she was the
physician who admitted Goehring to the hospital and treated her during her recovery. 
She stated that she initially ordered diagnostic tests, including magnetic resonance
imaging (“MRI”) scans, and consulted with Dr. Mahmood Moradi, a neurosurgeon,
on the results. Jacobson testified that Moradi concluded that the MRI on Goehring’s
spine revealed that she had bulging discs constituting “multi-level degenerative
changes.” Jacobson stated that she and Moradi agreed that the bulging discs were
pre-existing conditions that were not caused by the collision. But Jacobson also
testified that she and Moradi also agreed that Goehring had sustained a “whiplash”
injury in the collision with appellant that was “superimposed on this [bulging disk]
pre-existing condition.” 
          Appellant’s counsel asked Dr. Jacobson about injuries Goehring suffered in a
prior automobile accident in 1994, including whether or not that prior accident could
be the cause of her present symptoms. Jacobson testified that, according to the
records of the physician who treated Goehring after her 1994 accident, whether
Goehring would have permanent impairment as a result of the 1994 accident was
“undetermined.” Jacobson also stated that the 1994 “whiplash” injury was
“indirectly” related to the injuries Goehring was treated for as a result of the accident
caused by appellant. Jacobson explained, “I think [the accident with appellant] did
re-stress her neck and reactivate whiplash and, you know, cause her to have some of
the pain and some of the range of motion problems that she had when she came into
the hospital” after the accident caused by appellant. When asked by appellant’s
counsel if the 1994 neck trauma “made it worse when she was involved in this
accident in 2000,” Jacobson said that the accident in 2000 “re-activated symptoms.” 
          During the reading of Dr. Jacobson’s deposition testimony, appellant offered
medical records into evidence from two visits Goehring made to the Kelsey-Seybold
clinic approximately a month before being rear-ended by appellant. Appellant argued
that these records established that Goehring was already suffering, before the
accident, from the same problems she claimed were caused by the accident with
appellant. Goehring’s counsel objected to the introduction of the Kelsey-Seybold
records because there was “no medical testimony” to assist the jury in reading the
Kelsey-Seybold records and appellant was asking the jury “to rely upon that lawyer
over there [appellant’s counsel] to interpret these medical records for them.” The trial
court sustained the objection and excluded the Kelsey-Seybold records, but made it
clear that the issue could be re-addressed if medical testimony was made available to
assist the jury in interpreting the records. 
          During his cross-examination of Goehring, appellant’s counsel elicited
testimony that she continued to have, at the time of trial, “soft tissue” problems from
her 1994 accident. However, when appellant’s counsel asked, “[W]hen was the last
time, before the accident [with appellant, that] you had some of these soft tissue . . .”
the trial court interrupted the cross-examination, ordered the jury removed, and asked
appellant’s counsel if there were “any other areas that you have to inquire on
examination of this witness, Counsel, other than one that asked this witness to give
an answer as to information or cross that the Court had previously excluded?” 
Appellant’s counsel responded, “I don’t know.” The trial court then declared the
witness passed, asked appellant’s counsel if he had any more witnesses, and receiving
the response that appellant had no more witnesses, recalled the jury.DISCUSSION
          In his first issue, appellant contends that the trial court erred by “refusing to
allow Presswood to cross-examine Goehring about her prior back and neck problems.”
Appellant also complains in this issue of the trial court’s exclusion of Goehring’s
Kelsey-Seybold medical records from evidence.
A.      Restriction on cross-examination
          A review of the portion of the record cited by appellant as the basis for his
complaint reveals that he has mischaracterized what the trial court did at that point in
the trial. At that point, which was prior to the beginning of appellant’s cross-examination of Goehring, there is a rambling discussion by the trial court about what
kind of medical testimony might be admissible in a trial such as this one. However,
our review of this discussion and the dialogue between appellant’s counsel and the
court leads us to conclude that at most, if the trial court excluded anything at that time
it excluded only evidence directly related to Goehring’s visit to the Kelsey-Seybold
clinic on January 7, 2000.


 Contrary to appellant’s assertions, at this point in the trial
no specific evidence was offered or excluded and no other restrictions were placed on
cross-examination. We note that appellant made no objection to the trial court’s
actions at this time, therefore no error, if any there was, is preserved.


 Tex. R. App.
P. 33.1(a); see also Fortune Production Co. v. Conoco, Inc., 52 S.W.3d 671, 681 (Tex.
2000) (“Conoco did not assert this argument in the trial court, and, therefore, it has not
been preserved for appeal.”).
B.      Exclusion of Kelsey-Seybold records
          Before his cross-examination of Goehring, during the testimony by deposition
of Jacobson, appellant offered the Kelsey-Seybold records into evidence. Appellant
argued to the trial court that the Kelsey-Seybold records supported his contention that,
a mere month before the accident, Goehring suffered from the same symptoms she
complained of after the accident caused by appellant. Goehring objected to the
admission of the records on the basis that they were not “supported by medical
testimony.” The trial court sustained the objection.
          A trial court acts within its discretion in requiring expert guidance in
interpreting medical records. See, e.g., H.E. Butt Grocery Co. v. Resendez, 989
S.W.2d 768, 774 (Tex. App.—Corpus Christi 1997) (excluding “bare medical records
without any interpretation or evidence” that would relate prior knee surgeries to
current medical condition), rev’d on other grounds, 988 S.W.2d 218 (Tex. 1999);
Kalteyer v. Sneed, 837 S.W.2d 848, 854 (Tex. App.—Austin 1992, no writ) (noting
that case “illustrate[d] the hazard of trying to make a lay evaluation of medical records
rather than having expert testimony” to establish whether standard of care was
violated). Here, the excluded records consist of two single-page, pre-printed forms
with handwritten notations using abbreviations, symbols, and medical terminology
that would be unfamiliar to laypersons. In addition, the medical implications of the
information contained in the records clearly could not be determined by a layperson. 
We hold that, under these circumstances, the trial court did not abuse its discretion in
excluding the Kelsey-Seybold medical records.
          We overrule appellant’s first issue.
C.      Future Medical Damages
           In his second issue, appellant contends that the trial court erred in submitting
future medical damages as an element of recovery and then entering judgment on the
jury’s award. Specifically, appellant complains that the submission and entry of
judgment on the award was error because there was no evidence that future expenses
were probable as opposed to possible. We construe appellant’s issue to be a challenge
to the legal sufficiency of the evidence to support the charge to the jury on future
medical damages. 
          1.       Standard of Review
          An award of future medical expenses lies within the discretion of the jury. 
Rosenboom Mach. & Tool, Inc. v. Machala, 995 S.W.2d 817, 828 (Tex.
App.—Houston [1st Dist.] 1999, pet. denied). In considering the legal sufficiency of
the evidence to support an award of future medical expenses, we must examine the
entire record for any probative evidence and disregard all evidence to the contrary. 
Id.; see also Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). Texas follows the
“reasonable probability rule” for future damages for personal injuries. Machala, 995
S.W.2d at 828. To sustain an award of future medical expenses at all the plaintiff must
present evidence establishing, in all reasonable probability, that future medical care
will be required and the reasonable cost of that care. Id. Once the plaintiff has
established the reasonable probability of future medical expenses and care, a jury can
determine the reasonable amount of the expenses and care based on the injuries
suffered, the medical care rendered before trial, the progress toward recovery under
the treatment received, and the condition of the injured party at the time of trial. Id. 
          2.       Charge’s limitation of future medical award
          When asked by the trial court if he had any objections to the jury charge,
appellant’s counsel replied, “I don’t think there is any evidence of reasonable expenses
of necessary medical care in the future.” Goehring’s counsel asserted in response that
Jacobson had testified by deposition regarding possible future medical care, including
that Goehring might need to maintain a “TENS unit” for future use.


 The trial court
stated that it would allow Goehring’s argument for an award of future medical
expenses as to the evidence of the cost of maintaining the TENS unit, and excluded
any argument as to future surgeries. The trial court noted that appellant’s objection
was “overruled,” but that Goehring’s argument “was limited” by the trial court. Thus,
Goehring could recover only the expenses for her maintenance of the TENS unit and
other non-surgical medical care if her future need for it could be established in all
reasonable probability.
          3.       Evidence of reasonable probability
          There was no testimony establishing that, in all reasonable probability,
Goehring would require the use of the TENS unit or other medical care in the future.
Absent this testimony, the evidence was legally insufficient to support the jury’s award
for future medical care and expenses. See Machala, 995 S.W.2d at 828. 
          Goehring did testify that, as of the date of trial, she was still was using the
TENS unit to alleviate her pain, but also testified that she was no longer receiving
physical therapy and did not think she needed a doctor’s care to treat her pain. 
Additionally, Jacobson testified that Goehring’s use of the TENS at the time of trial,
two years after the accident, didn’t surprise her. But Jacobson also testified that
Goehring only “potentially” might need future medical treatment and that she
wouldn’t recommend Goehring throw away the TENS unit because she “could
perhaps” continue to use it. This testimony does not meet the standard of “all
reasonable probability.” See id. (reversing future medical award because evidence,
including plaintiff’s testimony she had ongoing pain from fractured vertebrae, did not
establish reasonable probability of future medical care); see also Pilgrim’s Pride Corp.
v. Smoak, 134 S.W.3d 880, 905-06 (Tex. App.—Texarkana 2004, pet. denied)
(reversing future medical award as too speculative and noting that reasonable
probability required showing needed future medical care was “more probable than
not”).
          We sustain appellant’s second issue. 
 
                                                     CONCLUSION
          We modify the judgment of the trial court to reduce the amount awarded to
Goehring by $5,000, that being the portion of the award attributed to damages for
future medical expenses, and, as modified, affirm the trial court’s judgment.
 
                                                             Sam Nuchia
                                                             Justice
 
Panel consists of Justices Nuchia, Jennings, and Alcala.